DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. The jury found Brett Green, defendant below and appellant herein, guilty of two counts of rape, in violation of R.C. 2907.02.
 {¶ 2} Appellant raises one assignment of error for review:
 {¶ 3} The trial court erred to the prejudice of appellant when it entered judgment of conviction on all counts of the indictment where such judgment was against the manifest weight of the evidence.
 {¶ 4} In the summer of 1999, the victim and her mother moved into an apartment with appellant. The victim first met appellant the same year when appellant began dating the victim's mother.
 {¶ 5} In the first week in November of 1999, following an argument between the victim's mother and appellant, the twelve-year-old victim accused appellant of rape. On October 6, 2000, the Ross County Grand Jury returned an indictment charging appellant with three counts of rape, in violation of R.C.2907.02. Subsequently, the prosecution dismissed one of the counts.
 {¶ 6} Beginning on August 28, 2002, and continuing until August 30, 2002, the court held a jury trial. The jury was unable to reach a verdict. The court held a second trial beginning November 4, 2003, and continuing until November 6, 2003.
 {¶ 7} At trial, the victim testified that two separate incidents of sexual activity occurred between her and appellant. The victim stated that one incident occurred the week before Labor Day, 1999. The victim went with her mother and appellant to a motorcycle rodeo at the Ross County fairgrounds and set up sleeping quarters in a delivery-style truck. That evening, while appellant helped to set up for the rodeo, the victim rode around on a golf cart with her mother and her mother's friends. The victim testified that one of her mother's friends was drinking Jim Beam and that the friend allowed her to "have a drink." The victim testified that the drink gave her a "slight head change." However, she had earlier told investigators that she was drunk and did not remember a lot of details.
 {¶ 8} Later that evening, the victim's mother dropped her off at the truck to change into her night shirt and panties. While she was changing, appellant entered the truck and told her that she "had a nice body." The victim testified that appellant then touched her breasts under her night shirt. He then removed her tampon and inserted his penis into her vagina. The victim stated that after appellant finished she "rolled over and went to sleep."
 {¶ 9} The second incident occurred on October 31, 1999. The victim had a friend over to spend the night at appellant's apartment, and the two girls decided they would sneak out of the house later that evening. The victim worried that she would be locked out of the house, so she asked appellant for permission. Appellant told the victim that he would tell her when she could leave. Around midnight, appellant asked to see the victim alone in the living room. The victim testified that when she entered the living room, appellant "had his penis out." Appellant then grabbed her by the hair and forced her to perform fellatio. The victim also stated that appellant threatened to kill her and her mother if she told anyone.
 {¶ 10} Appellant sought to bring the victim's credibility into question. The victim testified that she made her initial accusations following an argument between her mother and appellant. She said that appellant kicked her out of the house after she accused him of rape. However, appellant's daughter, who witnessed the exchanged, testified that the victim accused appellant of rape only after she was kicked out of the house. Appellant contends that the victim made the accusation in retaliation.
 {¶ 11} The victim's friend, Kimberly Young, that stayed over on Halloween night also testified for the defense as to the victim's credibility. The friend stated that she believed "that she's a liar and she does wrong all the time." Young, however, did somewhat corroborate the victim's testimony by stating that immediately before they snuck out, the victim told her that she "had to give [appellant] oral sex."
 {¶ 12} Appellant also presented evidence tending to show that the victim had a motivation to make up the allegations. He claimed that she resented him for disciplining her and for preventing her from talking to a friend out of her bedroom window. He also questioned how it was possible that the victim, in view of the fact that she testified that she performed fellatio, did not know if he was circumcised.
 {¶ 13} On November 6, 2003, the jury found appellant guilty of both offenses. Appellant filed a timely notice of appeal.
 {¶ 14} In his sole assignment of error, appellant asserts that his convictions are against the manifest weight of the evidence. Specifically, appellant argues that the victim's testimony is not credible and does not support his conviction.
 {¶ 15} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses, while bearing in mind that credibility generally is an issue for the trier of fact to resolve. See State v. Issa (2001), 93 Ohio St.3d 49,67, 752 N.E.2d 904; State v. Thomas (1982), 70 Ohio St.2d 79,80, 434 N.E.2d 1356; State v. Dehass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 16} It is fundamental that the trier of fact is to determine the weight given the evidence and the credibility given to the testimony of witnesses. See State v. Dye ((1998),82 Ohio St.3d 323, 329, 695 N.E.2d 763, 768; State v. Frazier
(1995), 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, 1014; State v.Williams (1995), 73 Ohio St.3d 153, 165, 652 N.E.2d 721, 732. Accordingly, the trier of fact may believe all, part, or none of the testimony of each witness who appears before it. See Statev. Long (1998), 127 Ohio App.3d 328, 335, 713 N.E.2d 1, 5;State v. Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80,88; State v. Harrison (1989), 63 Ohio App.3d 58, 63,577 N.E.2d 1144, 1147. We also acknowledge that a trier of fact is much better situated than an appellate court to view the witnesses and observe their demeanor, their gestures and their voice inflections, and to use those observations to weigh the credibility of their testimony. See State v. Shin (1997),118 Ohio App.3d 637, 641; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Thus, reviewing courts should defer to the trier of fact on matters of evidentiary weight and witness credibility.
 {¶ 17} Once a reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541 (quoting State v. Martin [1983],20 Ohio App.3d 172, 175, 485 N.E.2d 717). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley
(1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the "`exceptional case in which the evidence weighs heavily against conviction.'" Thompkins,78 Ohio St.3d at 387, 678 N.E.2d 541, quoting Martin, 20 Ohio App.3d at 175,485 N.E.2d 717); see, also, State v. Lindsey (2000),87 Ohio St.3d 479, 483, 721 N.E.2d 995, 1002.
 {¶ 18} In the case at bar, appellant argues, in essence, that the victim's testimony cannot be believed. Appellant contends that the victim manufactured the allegations and that no sexual encounters occurred. The jury, however, accepted the victim's testimony and version of the facts. This was well within the trier of fact's province and we see no reason why we should reject the trial court's determination. Thus, after our review of the evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice by choosing to believe the victim's testimony. The prosecution's case provides substantial evidence upon which the trier of fact could reasonably conclude, beyond a reasonable doubt, that each element of the charged offenses had been established.
 {¶ 19} Accordingly, based upon the forgoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be issued out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion.