DECISION AND JUDGMENT ENTRY
{¶ 1} Lee Davidson appeals his conviction for violating a protection order,[1] arguing that the conviction is against the weight of the evidence and not supported by sufficient evidence. He contends the state failed to prove that he acted recklessly when he violated the protection order since the state failed to prove that he knew the order existed. We disagree. Deputy Knox testified that he personally served Mr. Davidson with a copy of the protection order. Additionally, Sharon Davidson testified that Mr. Davidson had a copy of the order and knew about her failed attempt to have it rescinded. And while Mr. Davidson stated that he did not know about the protection order, the jury was free to disbelieve this testimony. After reviewing the evidence, we cannot say that the jury clearly lost its way when it convicted appellant of violating the protection order. Accordingly, we affirm the lower court's judgment.
 {¶ 2} In 2002, Sharon Davidson obtained a civil protection order against Lee Davidson, her husband. The order, which is effective until August 2007, provides: "1. RESPONDENT SHALL NOT ABUSE the protected persons named in this Order by harming, attempting to harm, threatening, molesting, following, stalking, bothering, harassing, annoying, contacting, or forcing sexual relations on them. * * * 7. RESPONDENT SHALL NOT INITIATE ANY CONTACT with the protected persons named in this order or their residences, businesses, places of employment, schools, day care centers, and babysitters. Contact includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writing, or communications by any other means in person or through another person. * * * NOTICE TO RESPONDENT: THE PERSONS PROTECTED BY THIS ORDER CANNOT GIVE YOU LEGAL PERMISSION TO CHANGE OR VIOLATE THIS ORDER. IF YOU CONTACT OR GO NEAR THE PROTECTED PERSONS, EVEN WITH THEIR PERMISSION, YOU MAY BE ARRESTED. ONLY THE COURT CAN CHANGE THIS ORDER. IF THERE IS ANY REASON WHY THIS ORDER SHOULD BE CHANGED, YOU MUST ASK THE COURT.YOU ACT AT YOUR OWN RISK IF YOU DISREGARD THIS WARNING."
 {¶ 3} Mrs. Davidson subsequently asked the court to lift the protection order, but the court refused. In September 2002, Mrs. Davidson allowed Mr. Davidson to move back in with her. However, by early 2004, they had separated and were living apart.
 {¶ 4} On February 19, 2004, Mrs. Davidson received a telephone call while at work from Mr. Davidson. She told him not to call her anymore, that she was going to lose her job, but he continued to call. Therefore, she called the police. Officer Campbell of the Chillicothe Police Department responded to the call. While Officer Campbell was speaking with Mrs. Davidson, Mr. Davidson called again. Officer Campbell informed Mr. Davidson that he was violating the civil protection order by calling Mrs. Davidson.
 {¶ 5} After speaking with Mrs. Davidson, Officer Campbell proceeded to Mr. Davidson's apartment. At that time, Mr. Davidson admitted that he had called Mrs. Davidson. Accordingly, Officer Campbell filed a complaint in the Chillicothe Municipal Court alleging that Mr. Davidson violated the protection order. Around that same time, the state also filed a complaint in the Chillicothe Municipal Court alleging that Mr. Davidson menaced his wife's friend, Marcus Sims. The court consolidated the cases and they proceeded to trial in March 2004. At trial, Mr. Davidson represented himself with help from an assistant public defender. After a one-day trial, the jury found Mr. Davidson not guilty of menacing but guilty of violating the civil protection order. The lower court sentenced him to 30 days in jail. In addition, the court imposed a one-year period of community control and ordered him to pay court costs. He appeals his conviction and raises the following assignment of error: "The trial court violated Mr. Davidson's right to due process when it convicted him of the charge without sufficient evidence to establish each and every element of the crimes beyond a reasonable doubt and when the conviction was against the manifest weight of the evidence."
 {¶ 6} Before addressing the assignment of error, we must first address an issue raised by the state. The state argues that Mr. Davidson's failure to move for judgment of acquittal under Crim.R. 29(A) waives any challenge to the sufficiency of the evidence. However, the failure to raise a sufficiency argument at trial does not waive that argument on appeal. See State v.Jones, 91 Ohio St.3d 335, 346, 2001-Ohio-57, 744 N.E.2d 1163;State v. Carter, 64 Ohio St.3d 218, 223, 1992-Ohio-127,594 N.E.2d 595. See, also, State v. Coe, 153 Ohio App.3d 44, 48-50,2003-Ohio-2732, 790 N.E.2d 1222. Rather, a defendant preserves his right to object to the alleged insufficiency of the evidence when he enters his "not guilty" plea. See Jones; Carter.
Moreover, "because `a conviction based on legally insufficient evidence constitutes a denial of due process,' * * * a conviction based upon insufficient evidence would almost always amount to plain error." Coe, 153 Ohio App.3d at 50, quoting State v.Thompkins, 78 Ohio St.3d 380, 386-87, 1997-Ohio-52,678 N.E.2d 541. See, also, State v. Casto, Washington App. No. 01CA25, 2002-Ohio-6255. Thus, we conclude that Mr. Davidson did not waive his challenge to the sufficiency of the evidence by failing to move for judgment of acquittal at trial. Accordingly, we proceed to consider appellant's assignment of error.
 {¶ 7} In his sole assignment of error, Mr. Davidson argues that his conviction is against the weight of the evidence and not supported by sufficient evidence. He argues that the state failed to prove that he recklessly violated the terms of the civil protection order.
 {¶ 8} When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Id., citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 9} R.C. 2919.27(A)(1) provides that no person shall recklessly violate the terms of a protection order issued under R.C. 3113.31, which governs domestic violence protection orders. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. * * *." R.C. 2901.22(C).
 {¶ 10} Mr. Davidson argues that the state failed to prove that he knew about the protection order and thus, it failed to prove that he recklessly violated the order. We disagree.
 {¶ 11} Sharon Davidson testified that Mr. Davidson had a copy of the protection order and knew about the order. Moreover, she testified that she told Mr. Davidson about the failed attempt to have the protection order lifted. She testified that when she told Mr. Davidson that the court would not lift the protection order, he responded, "[W]e're married. They can't do nothing."
 {¶ 12} Deputy Knox of the Ross County Sheriff's Office also testified at trial. Deputy Knox testified that he personally served Mr. Davidson with a copy of the protection order on January 15, 2003. He testified that Mr. Davidson was in a holding cell at the jail when he served him with the order. Additionally, the state admitted into evidence a Return of Service indicating that Deputy Knox served Mr. Davidson with a copy of the protection order on January 15, 2003.
 {¶ 13} During cross-examination of Deputy Knox, Mr. Davidson confronted Deputy Knox with a paper that apparently showed Mr. Davidson was not in jail on January 15, 2003. Moreover, Mr. Davidson testified that he was not in jail on January 15, 2003. He testified that he never received a copy of the civil protection order and that he did not know about the protection order.
 {¶ 14} We conclude the state offered sufficient evidence from which a reasonable trier of fact could find that Mr. Davidson knew about the protection order. Moreover, after viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable trier of fact could find that Mr. Davidson recklessly violated the protection order. The testimony of Sharon Davidson and Deputy Knox establishes that he knew about the protection order. In fact, Sharon Davidson testified that Mr. Davidson had a copy of the order.
 {¶ 15} The terms of the civil protection order specifically prohibit Mr. Davidson from contacting Mrs. Davidson. Mrs. Davidson testified that he called her four times on February 19, 2004. According to Officer Campbell, one of those calls occurred while he was present. Moreover, Mr. Davidson admitted to Officer Campbell that he had called his wife.
 {¶ 16} At trial, Mr. Davidson focused on the consensual contact that occurred while the protection order was in effect. However, the protection order expressly states: "IF YOU CONTACT OR GO NEAR THE PROTECTED PERSONS, EVEN WITH THEIR PERMISSION, YOU MAY BE ARRESTED." Thus, it does not matter whether Mr. and Mrs. Davidson cohabited while the protection order was in effect. Likewise, the fact that Mrs. Davidson gave him her work number is irrelevant. The protection order specifically prohibits Mr. Davidson from contacting Mrs. Davidson, even with her permission. Here, the state offered sufficient evidence from which the trier of fact could find (1) that Mr. Davidson knew about the civil protection order and (2) that he contacted Mrs. Davidson in violation of that order. Thus, a reasonable trier of fact could find, beyond a reasonable doubt, that Mr. Davidson was guilty of violating the protection order.
 {¶ 17} Having concluded that there is sufficient evidence to sustain appellant's conviction, we now consider whether appellant's conviction is against the manifest weight of the evidence. Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy, 84 Ohio St.3d 180, 193-94,1998-Ohio-533, 702 N.E.2d 866; State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 18} After reviewing the evidence, we conclude the jury did not lose its way when it convicted appellant of violating the civil protection order. Sharon Davidson testified that Mr. Davidson knew about the protection order. Additionally, Deputy Knox testified that he served Mr. Davidson with a copy of the civil protection order on January 15, 2003. He testified that Mr. Davidson was in a holding cell at the jail when he served Mr. Davidson. On cross-examination, Mr. Davidson confronted Deputy Knox with a paper showing appellant was not in jail on January 15, 2003. Unfortunately, we cannot afford this document much weight. In questioning Deputy Knox, appellant indicated that the paper, given to him by Sheriff Nichols, showed the dates of his incarceration for the past six years. However, Mr. Davidson failed to present a witness, such as Sheriff Nichols, to testify as to what the paper showed. Moreover, because Mr. Davidson did not offer the paper as an exhibit, there is no copy of it in the record on appeal. Thus, we have no way of knowing what the paper represents.
 {¶ 19} At trial, Mr. Davidson testified that he was not in jail on the day Deputy Knox supposedly served him with the protection order. He testified that he never received a copy of the protection order and that he knew nothing about the protection order. However, the jury is free to believe all, part, or none of a witness's testimony. State v. Harriston (1989),63 Ohio App.3d 58, 63, 577 N.E.2d 1144; State v. Caldwell (1992),79 Ohio App.3d 667, 679, 607 N.E.2d 1096. Although Mr. Davidson testified that he did not know about the protection order, the state offered evidence to the contrary. Apparently, the jury did not believe Mr. Davidson. After reviewing the evidence, we are not persuaded that the jury lost its way and created a manifest miscarriage of justice. Our review of the record reveals that the state presented substantial evidence from which the jury could conclude, beyond a reasonable doubt, that appellant was guilty of violating the protection order. Accordingly, we overrule appellant's assignment of error and affirm the lower court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] On March 22, 2004, appellant filed a pro se appeal, which was assigned Case No. 04CA2771. Three weeks later, the Ohio Public Defender filed a notice of substitution of counsel along with a notice of appeal from the same lower court case. However, this filing was assigned Case No. 04CA2773. On April 29, 2004, we sua sponte consolidated the cases into a single appeal.