{¶ 16} While I agree with the analysis and result reached by the majority as to the first assignment of error, I must respectfully dissent as to the second assignment of error.
 {¶ 17} Initially, I note that Dewey did not file an appellee's brief in this case. App.R. 18(C) provides that the appellee's failure to file a brief will generally bar the appellee from oral argument and will allow the court to "accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."
 {¶ 18} R.C. 2903.214(C) states that an "adult household member may seek relief under this section on behalf of any other family orhousehold member, by filing a petition with the court." (Emphasis added.). As used in R.C. 2903.214, a "family or household member" is "a spouse, person living as a spouse, former spouse, parent, child, persons related by consanguinity of [sic] affinity, and certain relatives of these persons." Guthrie v. Long, 10th Dist. No. 04AP-913,2005-Ohio-1541, citing R.C. 2903.214(A)(3). See also R.C. 3113.31.
 {¶ 19} Paragraph 10 of the CSPO states, "It is further ordered: Respondent-defendant shall have no contact or communication with workers building a house at 515 Fountain Street, Marion, Ohio." I cannot agree with the majority that paragraph 10 of the CSPO is merely "an extra clause to further emphasize that *Page 10 
Gail is to have no contact or communication with any individual on the property * * * ." The construction workers who were building Dewey's new home at 515 Fountain Street were not identified at any time in the proceedings and, as evidenced by this record, none of them sought a CSPO against Gail on their own behalf. More importantly, they were not listed as "family or household members" on any of the court's forms, and even if they had been listed, there was absolutely no evidence that any of the workers fall within the statutory definition of a "family or household member." See generally Guthrie.
 {¶ 20} Additionally, the order is overly broad in that it fails to limit the time or location of any contact between Gail and the workers. Because the trial court's wording focuses on restricting Gail's contact and communication with the workers themselves, the restriction applies while they are building a house at 515 Fountain Street and also wherever each and every one of the workers may be found at any time of the day or night. This provision makes Gail subject to criminal sanctions, as well as contempt of court proceedings per R.C. 2903.214(K) for having contact or communication with them.
 {¶ 21} While the trial court's apparent goal of keeping Gail away from the workers on Dewey's property (in order to keep the peace) is laudable, pursuant to R.C. 2903.214(E)(1), the trial court could have simply ordered Gail to refrain from entering the land and building commonly known as 515 Fountain Street, Marion, *Page 11 
Ohio. This provision would accomplish the court's objectives without running afoul of the statute. Therefore, I would find that Gail's brief reasonably sustains a holding that the trial court's inclusion of those unidentified persons in its CSPO was contrary to law and an abuse of discretion.
 {¶ 22} I would also note that this conclusion would not leave Dewey unprotected or without remedy should Gail communicate with a worker in order to get the worker to contact or "send a message" to Dewey. Paragraph 8 of the CSPO, which prohibits Gail from causing or encouraging "any other person to do any act prohibited by this order[,]" would cover such a situation. Should Gail contact or communicate with a worker to cause or encourage him to do any act prohibited by the CSPO, she would be in violation of paragraph 8, and Dewey could seek an appropriate remedy under R.C. 2903.214(K).
 r *Page 1