[Cite as *In re Blough*, 2010-Ohio-6712.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: STEPHANIE K. BLOUGH

STEPHANIE K. BLOUGH

     Applicant

Case No. V2009-40714

Commissioners:
Karl C. Kerschner, Presiding
Thomas H. Bainbridge

OPINION OF A TWO
COMMISSIONER PANEL

{1}The appeal before this panel involves whether the applicant, Stephanie K. Blough, qualifies as a victim of criminally injurious conduct as defined in R.C. 2743.51(C)(1). The majority finds the applicant failed to prove by a preponderance of the evidence that she sustained personal injury as the result of conduct that posed a substantial threat of personal injury and is punishable by fine, imprisonment, or death. Therefore, the applicant's claim for an award of reparations is denied.

*I. Procedural History*

{2}On March 19, 2009, the applicant, Stephanie K. Blough, filed a compensation application as the result of an incident which occurred on June 8, 2008. On June 30, 2009, the Attorney General issued a finding of fact and decision denying the applicant's claim. On July 27, 2009, the applicant submitted a request for reconsideration. The applicant asserted she was the victim of stalking. In support of her contention she submitted the affidavit of her husband, Mark Blough.

{3}On September 23, 2009, the Attorney General rendered a Final Decision finding no reason to modify its initial decision. On September 30, 2009, the applicant filed a notice of appeal from the September 23, 2009 Final Decision of the Attorney

General.   Therefore, a hearing was held before this panel of commissioners on December 3, 2009 at 10:30 A.M.

*II. Applicant's Position*

{4}The applicant asserts that she was a victim of menacing by stalking, a violation of R.C. 2903.211. She contends that the Attorney General erred in only considering the incident of June 8, 2008, but should have taken into consideration the prior activities and conduct of the offender. Furthermore, the applicant maintains that she received a five year Consent Agreement for a Civil Stalking or Sexually Oriented Offense Protection Order on March 5, 2009 on the basis of the offender's criminal acts. The applicant argues this pattern of conduct caused her to believe she would suffer physical harm. Applicant urges this panel to rely on an Order of Protection issued by Magistrate Flowers in the Stark County Common Pleas Court.

{5}The applicant reasoned her sworn statements establish the criminal offense of Menacing by Stalking, a first-degree misdemeanor. The offense of Menacing by Stalking by its very nature qualifies as "criminally injurious conduct." The applicant points out that R.C. 2903.211(A)(1) defines menacing by stalking as:

{6}"No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{7}R.C. 2903.211(D)(1) defines pattern of conduct in pertinent as follows: "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."

{8}The applicant contends that the activities of the offender meet the definition of menacing by stalking. Furthermore, the applicant asserts that this panel should rely on the holdings in *Shockey v. Shockey,* 2008-Ohio-6797 and *Rauser v. Ghaster,* 2009-Ohio-4027, for direction in determining that all activities and conduct of the offender should be considered in determining whether a pattern of conduct exists. Therefore, the panel should overturn the Final Decision of the Attorney General and find that the applicant was a victim of criminally injurious conduct.

*III. Attorney General's Position*

{9}The Attorney General asserts that the applicant has failed to meet her burden of proof establishing that she was a victim of criminally injurious conduct by a preponderance of the evidence. The Attorney General investigated the incident by obtaining a Massillon Police Department report dated June 9, 2008. The report indicates that the applicant asserted the suspect, Jacob Hinzman, was in her yard on June 8, 2008. However, the suspect denied he was even in the city of Massillon on the day in question, and the applicant's husband could not confirm the suspect's presence since he did not "get a good look at him." After review of the incident the Massillon Police Department determined there was insufficient evidence to press charges of criminal trespass or menacing by stalking against the offender. The Attorney General rejects the applicant's argument concerning a pattern of conduct since only one unsubstantiated incident was reported to police. Moreover, the proffered affidavit was prepared by the applicant's husband, was never offered in court, and was not subject to cross-examination. Finally, the parties entered into a consent agreement, wherein the suspect did not admit to any allegations asserted by the applicant; in fact, he specifically denied the allegations. The state maintained a mutual restraining order is not evidence of criminally injurious conduct and the September 23, 2009 Final Decision of the Attorney General should be affirmed.

*IV. Witness Testimony and Argument*

{10}The applicant's attorney, Dennis Yacobozzi, appeared and Assistant Attorney General Janean Weber appeared on behalf of the state of Ohio.

{11}The Attorney General called field investigator Christian Hallows to testify. Mr. Hallows related he was assigned to investigate the case at bar. He requested any and all police reports from the Massillon Police Department concerning incidents involving the

applicant and Mr. Hinzman. He only received one report dated June 9, 2008. No arrests, charges, fines or imprisonments were imposed as the result of this incident.

{12}Upon cross-examination the witness revealed he never spoke to the investigating police officer or the applicant or her husband. Mr. Hallows stated that he relied only on law enforcement to verify the occurrence of the events surrounding this incident and never contacted the first party witnesses.

{13}The applicant asserted that the burden of proof had been met to establish that the applicant was a victim of criminally injurious conduct. The applicant urged the panel to follow the holding in *Shockey v. Shockey,* 2008-Ohio-6797 which stated: "[t]rial courts may take every action into consideration even if some actions in isolation would not seem particularly threatening." Id. at ¶ 19. Furthermore, the applicant contends that the pattern of conduct need not be threatening to constitute the offense of menacing by stalking. According to the applicant, the sworn statement of the applicant, in the petition for the protection order, and the applicant's husband's affidavit substantiate that the applicant was a victim of criminally injurious conduct. Those statements should be given great weight since they have not been contradicted and were the basis for Jacob Hinzman agreeing to the maximum term of five years in the consent agreement. The only statement submitted by the Attorney General was the report of the Massillon Police Officer. It was asserted that the two statements offered by the applicant and her husband outweigh the police officer's recollections of the incident, which he did not personally witness. Therefore, the applicant asserts that criminally injurious conduct has been established.

{14}The Attorney General contends menacing by stalking sufficient to qualify as criminally injurious conduct in the present case has not been established by the applicant. The incident on June 8, 2008 was not criminally actionable as determined by the Massillon Police Department. The other incidents mentioned have not been corroborated by law enforcement or tested by cross-examination. When the statements contained in the petition for the civil protection order, the consent agreement, the alleged offender's statements, the husband's affidavit, and the police officer's statement were considered there was insufficient evidence presented to prove by a preponderance of the evidence that the applicant was a victim of criminally injurious conduct. Whereupon the hearing was concluded.

{15}The only evidence offered in support is the box checked on the exparte order of protection issued by the Stark County Common Pleas Court on February 23, 2009 which states: "The court finds that the Respondent (Jacob Hinzman) has threatened the protected persons named herein with bodily harm, has caused mental distress, or has been convicted of or pled guilty to a violation of section 2903.211 of the Revised Code against the protected persons named in this order." We find this is insufficient to prove criminally injurious conduct.

*V. Majority Panel's Determination*

{16}After full and careful consideration of all the material contained in the claim file, the testimony presented at the hearing, and the oral argument of the parties, we find the applicant has failed to prove by a preponderance of the evidence that she was a victim of criminally injurious conduct. The applicant concedes in order to establish criminally injurious conduct it must be shown that the alleged offender engaged in menacing by stalking. Accordingly, it is the applicant's burden to prove each element of the offense by a preponderance of the evidence. The applicant asserts she was subject to a pattern of conduct which is the basis for menacing by stalking. The applicant also relies on the affidavit of her husband, Mark Blough. In Mark Bough's affidavit he avers how he is fearful for his wife's safety, but does not mention any physical or mental problems his wife is experiencing. Moreover, Mr. Blough's affidavit

provides no additional information concerning other incidents and is not contained in the applicant's petition for the civil protection order.

{17}The applicant urges the panel to rely on the holdings in *Shockey v. Shockey*, 2008-Ohio-6797 and *Rauser v. Ghaster,* 2009-Ohio-4027.   However, both cases can be distinguished from the case at bar.   In *Shockey,* the menacing by stalking occurred between ex-spouses.   The offender in that case repeatedly harassed his ex-wife by calling her names and refusing to leave when he dropped off the children after visitation.   He confronted his ex-wife at her friend's home, threatened to place her son with children services if she would not personally talk with him, and subsequently got into a physical altercation with her friend while trying to confront his ex-wife. Furthermore, the ex-husband admitted he confronted his ex-wife numerous times which resulted in calls being placed to 911.   The ex-husband admitted he had arguments with, talked loudly to, and made threats to his ex-wife.   All these statements were given under oath.

{18}In the *Rauser* case, the victims were harassed by their neighbor after they refused to testify on her behalf in a civil rights suit involving other neighbors.   At trial, witnesses testified that Ghaster exhibited the following behavior toward the Rausers and their daughter:   1) yelled threats and gestured obscenely; 2) stood in the front of the home for hours yelling threats and taking photos; 3) repeatedly called on the phone stating Laurie Rauser would be sorry if she refused to testify on Ghaster's behalf; and 4) left a book in the bushes for Rauser's daughter.   Finally, Laurie Rauser testified at the trial concerning the fear she experienced which resulted in her seeking professional help and using prescription medication.

{19}In the case at bar, it appears that the alleged offender never physically or verbally confronted the applicant. The alleged threat made in December 2006 to the applicant and the subsequent incidents that occurred in 2008 are too remote in time and space to constitute a pattern of conduct as defined in R.C. 2903.211(D)(1). Therefore, we will only focus on those incidents occurring in 2008. We cannot find, by a preponderance of the evidence, those incidents collectively would cause the applicant to believe that she would suffer physical harm. Furthermore, Jacob Hinzman specifically denied any of the incidents occurred when he signed the consent agreement.

{20}Officer Kenneth Smith of the Massillon Police Department investigated the incident. While he was not present on the scene at the time of the occurrence of these actions, his experience and his ability to interview all the parties in an objective manner should not be discounted. After listening to both sides and bringing the parties together to observe their demeanor, the officer concluded no crime had been committed.

{21}We reject the argument set forth by the applicant that the pattern of conduct need not be threatening to constitute menacing by stalking and, subsequently, criminally injurious conduct. The basis of criminally injurious conduct is that the conduct must pose a threat of personal injury or death. If the pattern of conduct is not threatening then, consequently, criminally injurious conduct cannot be found.

{22}Finally, assuming arguendo that the applicant has proven that the conduct was punishable by fine, imprisonment or death, the applicant failed to prove she suffered any physical or mental injury as the result of the conduct. A review of the compensation application, the request for reconsideration, the applicant's brief, the consent agreement, the petition for civil stalking or sexually oriented offense protection order, and the police report are devoid of any evidence of physical or mental harm the applicant suffered. There is no evidence she ever sought professional treatment or help and she has not provided this panel with any statement concerning the mental or

physical suffering she sustained as a result of the alleged offender's conduct. Therefore, the September 23, 2009 Final Decision of the Attorney General is affirmed.

_____
KARL C. KERSCHNER
Presiding Commissioner


_____
THOMAS H. BAINBRIDGE
Commissioner

**Lloyd Pierre-Louis, Commissioner, Dissenting Opinion:**

{23}I respectfully dissent.   I find that the applicant has proven by a preponderance of the evidence that she was a victim of criminally injurious conduct as defined by R.C. 2743.51(C)(1).   Unlike my colleagues, I believe that applicant has satisfied both prongs of the test to establish criminally injurious conduct.   I concur with the majority's finding that the offender engaged in conduct which was punishable by fine, imprisonment or the death penalty.   However, I contend that the evidence contained in the claim file established that the conduct posed a substantial threat of personal injury or death.

{24}I believe the majority of the panel discounts the applicant's petition for a civil protection order filed with the Stark County Common Pleas Court.   Under the penalty for falsification of documents and perjury, the applicant swore or affirmed that Mr. Hinzman "will cause [her] physical harm or cause (or has caused) mental distress." This sworn statement has not been rebutted by any evidence presented by the Attorney General.   Furthermore, Magistrate Flowers issued an ex parte Order of Protection which determined Mr. Hinzman "has threatened the protected persons named herein with bodily harm, has caused mental distress* * *."   Finally, on March 5, 2009, the parties entered into a consent agreement whereby Mr. Hinzman agreed to stay away from the applicant until March 5, 2014, a period of five years.   None of this information has been refuted or rebutted by the Attorney General.

{25}I agree with the majority that the factual scenarios presented in *Shockey v. Shockey*, 2008-Ohio-6797  and  *Rauser v. Ghaster*, 2009-Ohio-4027  may be distinguished from the case at bar.   However, applicant did not cite those cases based on the facts presented, but rather as a basis for determining the relationship between unrelated acts.   These acts, when taken as a whole constitute menacing by stalking.

Whereas, standing independently, they may not constitute menacing by stalking. In *Shockey*, the Fifth District Court of Appeals cited *Guthrie v. Long*, 2005-Ohio-1541 and *Miller v. Franciso*, 2003-Ohio-1978, for the proposition that a "[t]rial court may take every action into consideration, even if some actions in isolation would not seem particularly threatening." In *Rauser*, the Eighth District Court of Appeals held that threats of physical harm are not necessary to constitute a violation of R.C. 2903.211(A), rather "the test is whether the offender, by engaging in a pattern of conduct, knowingly caused another to believe the offender would cause physical harm to him or her. *Kramer v. Kramer*, Seneca App. No. 13-02-03, 2002-Ohio-4383." *Rauser* at ¶ 21. Therefore, the perception of the victim is relevant in determining the seriousness of the offender's actions.

{26}In the case at bar, I believe the applicant has proven by a preponderance of the evidence, based upon her prior familiarity with Mr. Hinzman in a working relationship, what he was capable of doing. While to an outside observer, Mr. Hinzman's actions may appear harmless, unrelated or even coincidental, based upon the applicant's prior knowledge and experience she considered these actions to convey a threat of personal injury. The applicant affirmatively acted upon her feelings by seeking a civil protection order against Mr. Hinzman. She convinced Magistrate Flowers of her fears, causing the magistrate to grant her a civil protection order. Furthermore, we should defer to the judgment of the magistrate who was able to view the credibility and veracity of the applicant. *Felton v. Felton*, 79 Ohio St. 3d 34, 1997-Ohio-302, 679 N.E. 2d 679 paragraph two of the syllabus.

{27}Finally, the unrefuted evidence contained in the affidavit of the applicant's husband, Mark Blough, expressed his fearfulness for his wife's safety.

{28}Based upon the totality of the evidence presented I find the applicant has met her burden and has proven by a preponderance of the evidence she was a victim of criminally injurious conduct as defined in R.C. 2743.51(C)(1).


_____
LLOYD PIERRE-LOUIS
Commissioner



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: STEPHANIE K. BLOUGH

STEPHANIE K. BLOUGH

    Applicant
Case No. V2009-40714

Commissioners:
Karl C. Kerschner, Presiding
Thomas H. Bainbridge

ORDER OF A THREE-COMMISSIONER PANEL

IT IS THEREFORE ORDERED THAT

{29}1)   The September 23, 2009 decision of the Attorney General is AFFIRMED;

{30}2)   The claim is DENIED and judgment is rendered for the state of Ohio;

{31}3)   Costs are assumed by the court of claims victims of crime fund.


_____

KARL C. KERSCHNER
Presiding Commissioner



_____

THOMAS H. BAINBRIDGE
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2010\Jan - Aug 2010\V2009-40714.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Stark County Prosecuting Attorney and to:


Filed 8-19-10
Jr. Vol. 2276, Pg. 47
Sent to S.C. Reporter 10-6-11